UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM D. SMITH,


Plaintiff.


v.                              Case No. 15-10288
                                Hon. Laurie J. Michelson


MELANY GAVULIC and
HURLEY MEDICAL CENTER,


Defendants.

_____/

DEFENDANT'S MOTION FOR PROTECTIVE ORDER

BEFORE MAGISTRATE-JUDGE ANTHONY P. PATTI
United States District Court
Monday, July 27, 2015


APPEARANCES:

For the Plaintiffs:     GLEN N. LENHOFF
                        MICHAEL E. FREIFELD
                        Law Office of Glen N. Lenhoff
                        328 Saginaw Street
                        Flint, MI 48502

For the Defendant:      ERIC J. PELTON
                        Kienbaum Opperwall Hardy
                        & Pelton, P.L.C.
                        280 N. Old Woodward Avenue
                        Birmingham, MI 48009


Transcriber:
Carol S. Sapala, RMR, FCRR
313.961.7552
www.transcriptorders.com

Defendant's Motion for Protective Order 7-27-2015

C O N T E N T S

_____

IDENTIFICATION                                    PAGE


WITNESSES

None.

Defendant's Motion For Protective Order

Argument by Mr. Pelton                              4
Response by Mr. Lenhoff                            12
Rebuttal Argument by Mr. Pelton                    44


The Court's Ruling                                 50



Certificate of Court Reporter                      71

E X H I B I T S

_____

IDENTIFICATION                    MARKED      RECEIVED


                        None.

Defendant's Motion for Protective Order 7-27-2015

1          Detroit, Michigan

2          July 27, 2015

3          10:03 a.m.

4          (The transcriber was not

5          present at this hearing)

6          THE CLERK:  United States Court now calls 15

7    dash 10288, Smith versus Gavulic.

8          MR. PELTON:  Good morning, Your Honor.  It's

9    Eric Pelton on behalf of the defendants.

10         THE COURT:  Good morning, Mr. Pelton.

11         MR. PELTON:  I think this has been well

12   briefed and I don't want to belabor what's in the

13   briefs.

14      There's, I think, three or four things I want to

15   highlight very quickly.  The first that the Michigan

16   rule on this issue is quite explicit.

17      The only exception for a former general counsel or

18   former attorney of a client to reveal client confidences

19   and privileges is a fee dispute which isn't at issue

20   here or to defend against wrongful conduct.

21      Michigan, as we outlined in our brief,

22   intentionally departed from ABA rule that would allow

23   use in prosecuting civil claim.

24         THE CLERK:  Your name again?

25         MR. PELTON:  Eric Pelton.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1      The second point I want to make in response to

2   plaintiff's arguments is we're not seeking dismissal of

3   his case, at least at this point, because we're not sure

4   what he is using to support his claims.

5      We've not taken his deposition yet and we want to

6   get this issue resolved before we do and have a protocol

7   set up for privilege issues.

8      But just suppose he's having a conversation with

9   the CEO, Defendant Gavulic, in the context of a race

10  litigation case.  And the CEO is sharing ideas and

11  asking questions and he construes something she says as

12  racial, that would be a privileged conversation, I

13  think.

14     Or maybe there's disagreement in how to handle a

15  particular piece of litigation.  He goes to the board,

16  and then claims she retaliates these are privileged

17  conversations.  But we don't know that until we find out

18  what the basis of his claims are.

19     So, at this point, we're not seeking dismissal,

20  we're only seeking an order that would provide

21  protections for the attorney-client privileges and

22  confidences that we fear may come up in this case.

23     I think the Supreme Court of California in the

24  *General Dynamics* case summarizes this point very well

25  876 Pacific 2d 487.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    And at 503 to 504 they make this very point.  It

2  would be a rare instance where you would dismiss a case

3  on the pleadings, but it really depends on the context

4  of the case and context in which the privileges may

5  arise.  So it's yet to be determined.

6    But what we do seek at this point is an order that

7  would protect our privileges and client confidential

8  information.

9    The third point I wanted to make, again in response

10  to their brief, is that were not seeking to preclude Mr.

11  Smith's use of confidential information in response to

12  the after-acquired evidence of the defense, again, one

13  of the exceptions under Michigan.

14    Case law is to defend against allegations of

15  wrongful conduct that's likely to come up in the law is

16  to defend against allegations of wrongful conduct that's

17  likely to come up in the after-required evidence defense

18  and he would be able to use client confidences and

19  attorney-client privileges to defend himself from that

20  claim.

21    I don't think it's going to be much of an issue

22  here, but the point is, it's a narrow and limited

23  ability to use that on points that bear directly on the

24  activities that are alleged to have been misconduct.

25

Defendant's Motion for Protective Order 7-27-2015

1    And then the final point I wanted to make is we've

2  made suggestions in the last part of our opening brief

3  on what the order might look like and what it needs to

4  contain.

5    I want to raise a couple of more points, I'm not

6  sure, we either didn't put in the brief or didn't

7  suggest at the time.

8    One is that we need time to designate.  So, for

9  example, we might be in a deposition, a privilege issue

10  comes up.  We would probably make a separate record, but

11  we may miss something.

12    And I think they're ought to be a period of time,

13  21 days or something after receipt of the transcript for

14  us to declare that something is, is attorney-client

15  privilege and discuss it with, with Mr. Lenhoff and Mr.

16  Freifeld.

17    This is a hugely important issue because we just

18  received about a 2500 page document production and it

19  appears at first glance that many of the documents in

20  their privilege communications, communications with

21  outside counsel, there's communications with the CEO

22  concerning active litigation, these would be privilege

23  communications.

24    We would need time, the order to provide us with

25  time to designate, wait a minute, that's privileged.  It

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   shouldn't be used and you need to protect it under the

2   order.

3        So I'd suggest, you know, 14 or 21 days a

4   reasonable amount of time to declare that after

5   receiving a dep transcript or after receiving documents

6   in a case.

7        The second part of the order I wanted to, to add is

8   that it should preclude plaintiff, Mr. Smith or his

9   counsel, from using these client confidences and

10  privileged information in any other matters.

11       I've become aware that there's at least two -- I

12  think one or two other cases in which Mr. Lenhoff's

13  office represents clients against Hurley Medical Center.

14       And I think Mr. Smith and Mr. Lenhoff -- I'm not

15  suggesting they would do this intentionally, but they

16  certainly need to be careful about using any confidences

17  they learned in this case in these other matters.

18       And then the rest of the information I think we've

19  provided in the back of our initial brief as to what

20  ought to be contained in their order provided in the

21  report.

22            THE COURT:  One thing you didn't mention was

23  for which would typically be in a protective order is

24  what to do at the end of the litigation.

25


Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    Typically, either you have to destroy materials or

2  return materials, give some certification as to what

3  happened to the materials that are subject to protective

4  order.

5    So, presumably, if I were to enter a protective

6  order, that would be yet another term that are you ought

7  to be added.  Correct?

8    MR. PELTON:  Absolutely.  And I guess we,

9  we -- maybe we should have attached a proposed order, we

10  didn't.  Yeah, that's absolutely routine in those kinds

11  of orders to protective privileges.  We would need that

12  here.  We'd be happy to submit an order if that would be

13  helpful to the Court.

14    THE COURT:  Now I did look at your affirmative

15  defenses, which I hold up.  And your after-acquired

16  evidence of affirmative defense, which I've no doubt is

17  plead in good faith, but it kind of looks like the

18  typical after-acquired evidence affirmative defense.

19  It's not very detailed, but it's simply says that

20  after-acquired evidence could preclude future damages or

21  whatever.

22    My understanding from reading the briefs is that --

23  and I think this actually came from the plaintiff's

24  brief where they attached some communications that you

25  had that, as of now, that relates specifically to an

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1  issue of whether the plaintiff was properly scrutinizing

2  the bills of a medical malpractice defense firm.

3          MR. PELTON:  That's correct.

4      We sat down with Mr. Lenhoff and Mr. Freifeld

5  actually prior to a mediation to discuss this defense

6  and try to explain it to him.

7      We then provided them with documents we felt were

8  relevant in advance of a private mediation that we did.

9  And so I think they're fully appraised in that right

10  now.  That is the issue, there may be others but, you

11  know, they're still investigating somethings.

12          THE COURT:  Obviously, the nature of

13  after-acquired evidence is at some point down the line

14  you might find something else and you'll assert it under

15  that same --

16          MR. PELTON:  That's true.

17          THE COURT:  -- but as of now, that's what

18  we're talking about.

19          MR. PELTON:  That's what we're talking about.

20  The issue -- the issues really come full circle.

21      Because the outside counsel who represented Hurley

22  in the medical malpractice cases that we say were

23  mishandled has now sued Hurley claiming they're not

24  paying his fees, which would be one of these exceptions.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    So I think a lot of that may come out in that case

2  and the privileges are going to probably evaporate over

3  that specific set of issues.

4    That's why I mention I don't think it's going to be

5  a major contention in this case, but it's something we

6  certainly need to be cognizant of.

7    And, again, to the extent Mr. Smith wants to use

8  that to reveal any client confidences, again, it's got

9  to be construed narrowly and only go to that allegation

10  or that activity where he's alleged to have mishandled.

11    THE COURT:  As I read that allegation, it

12  didn't not appear that the plaintiff repeatedly says

13  that you're making ethical accusations against him, it

14  did not appear that you were accusing him of violating

15  the rules of ethics but, rather, accusing him of

16  incompetence or failure to be diligent, but not

17  necessarily of dishonest conduct, let's say.

18    MR. PELTON:  That's, that's correct.  I think

19  it can be viewed as a -- as -- you know, some of the

20  cases point this out.

21    As a general counsel, you have a counseling role as

22  a lawyer and often you also have a business role and you

23  have a business hat on.

24    At this point, I would say it appears that it was

25  just not well handled as a businessman as an executive

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    of the company.

2        Whether it goes beyond that, we have not filed and

3    ethical charge.  I'm waiting, I think, to hear his

4    explanation in a deposition before we make that

5    determination.

6        But I would say, based on what I've seen so far,

7    we'd certainly give him the benefit of the doubt that

8    this was really poor management.

9            THE COURT:  I think going forward and I

10   believe the plaintiff will agree with this because he

11   wore two hats; one is a hat as I guess as an officer as

12   a managerial role, another hat is attorney.  This comes

13   up any time a lawyer wears those two hats.

14       There's probably going to be some question going

15   forward as to which communications are, in fact, subject

16   to the attorney-client privilege and which are just part

17   of his role as part of the management.

18           MR. PELTON:  That's absolutely right.  And

19   that's what I mentioned, I think that's discussed in

20   some of the cited cases.

21       That's why I hoped to have a protocol where we can

22   sit down and talk about these things; and if we can't

23   resolve it, we'd have to come to the Court.  But it

24   needs be kept under seal until that determination's

25   made.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          THE COURT:  Anything further?

2          MR. PELTON:  I have nothing further unless the

3    court has any questions.

4          THE COURT:  Not at this time.  I'd like to

5    hear from the plaintiff.

6          MR. PELTON:  Thank you.

7          THE COURT:  Mr. Lenhoff.

8          MR. LENHOFF:  How are you, Your Honor?

9          THE COURT:  Fine.  How you are you?

10         MR. LENHOFF:  Fine.  Just a couple significant

11   points I'd like to make.

12       First of all, I think the Court's instincts as to

13   that last point are right on, in the sense that as a

14   general counsel, as a general counsel of a corporation,

15   it's a different role then as attorney for a single

16   plaintiff.  And there would be quiet a bit of different

17   work determining what is privileged.

18       We've cited to that *Kachmar* case, Third Circuit

19   case, that may made that observation.  In that case, the

20   Third Circuit made the observation that it's, it's

21   just -- it's just difficult, it's just difficult

22   sometimes to ascertain what is administrative and what

23   is not with respect to the -- with respect to a general

24   counsel.

25       Just a quote for a moment the *Kachmar* case.

                    Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1           THE COURT:  What page are you quoting from?  I

2    have I copy of it here.

3           MR. LENHOFF:  Page 181 dash 182.

4           MR. PELTON:  I'm sorry.  Which case is it?

5           MR. LENHOFF:  *Kachmar*, the Third Circuit case.

6           THE COURT:  *Kachmar v Sunguard* 109 F.3d 170,

7    Third Circuit 1997.

8        You're at page 181 you said?

9           MR. LENHOFF:  181-182.

10          THE COURT:  I got it.  Thank you.

11          MR. LENHOFF:  It says here in the opinion:

12          It's premature at this stage of the

13          litigation to determine the range of

14          evidence Kachmar will offer and whether it

15          will implicate the attorney-client

16          privilege.

17          For example, without deciding the substance

18          of the issue, it's difficult to see how

19          statements made to Kachmar and other

20          evidence offered in relation to her own

21          employment would implicate the

22          attorney-client privilege.

23          It is also questionable whether information

24          that was generally observable by Kachmar as

25          an employee of the company, such as her

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1              observation concerning the lack of women in

2              a Sunguard subsidiary would implicate the

3              privilege.

4              There may be a fine but relevant line to

5              draw between the fact that Kachmar took

6              positions on certainly legal issues

7              involving Sunguard's policies and the

8              substance of her legal opinion.

9        Where that point is particularly significant is the

10   proposed protective order that the defendant's cite.

11        You see, one point that -- I thought the briefs

12   were very good, but one point I don't think was brought

13   out is there is a protective order already in this case.

14        May I approach the bench?

15            THE COURT:  Well that's, that's something new

16   to me.  I didn't realize that and I didn't scrutinize

17   the entire record to see that, but if you have a copy --

18   is that copy for me?

19            MR. PELTON:  Not with me, but I'm generally

20   familiar with.  Thank you.

21        (After a short delay, the proceedings continued)

22            MR. LENHOFF:  This protective order, after

23   considerable negotiations, was entered on May 22, 2015,

24   signed by the Court on that day.

25


                Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    Interestingly, it brings up that issue the Court

2  did of the determine of confidential information at the

3  end of the case.  It's also allows a wide range of

4  documents that it doesn't make confidential.

5    And provides here -- while this order that is now

6  before you, Your Honor, doesn't dispose of the issue for

7  you today, the plaintiff's counsel is free, on page

8  nine, Your Honor, of the order, plaintiff is free to

9  argue that this protective order should bear on Rule 1.6

10  issues.  That, of course, would be the ethical Rule 1.6.

11    See, today, the defendant would have this Court

12  make a sweeping substantive rule in its proposed

13  order -- in his proposed order in the defendant's brief.

14    This is the first position defendants asked this

15  Court to enter.

16        Smith should be forbidden by default from

17        disclosing Hurley's contents and secrecy to

18        any person using Hurley confidences and

19        secrets, including disclosure for offensive

20        use and support of his liability.

21    Now that is inappropriate, Your Honor, at this

22  point.  We would agree -- we've already agreed to return

23  confidential materials.

24    We would agree that any information we learn of in

25  this case, any information that's within the scope of

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   the attorney-client privilege, to not use it in

2   successive cases.

3        Yes, I do have other cases against Hurley.  I would

4   pledge and enter into a stipulation to refrain from

5   using that information in any other Hurley case.

6            THE COURT:  That language is already contained

7   in this particular order, that's docket entry number 13,

8   right?

9        You already have such a provision that you can only

10  use confidentially designated information in this case,

11  not in other cases, right?  That would a be standard

12  provision.  Is it in here?

13           MR. LENHOFF:  Right.  Is it in here?

14           THE COURT:  I'm sorry.  It's nine pages long.

15  I'm not a speed reader.

16           MR. LENHOFF:  I know it is.  Well, I think

17  inferentially it is because it prohibits the plaintiff

18  from this closing information to all but a specified

19  subset of people, set out at pages three and four.

20       But to the extent it's not adequately treated in

21  this order, I would agree to it.  I would agree to it.

22       But as far as an order at this time prohibiting the

23  plaintiff from using any Hurley confidences and secrets

24  in support of his liability claims offensively, I don't

25  think that's appropriate.

Defendant's Motion for Protective Order 7-27-2015

1    Contrary to what Mr. Pelton just said, I don't

2    think the Michigan ethical rule's clear on this, just

3    doesn't really speak to it, interestingly, and then it,

4    it would be impractical, also.

5    We do have an ethics rule that we cited, this

6    District of Columbia case which actually speaks of a

7    lawyer's claim against the employer client for a

8    discrimination case like this.

9    THE COURT:  What struck me about that ethics

10   opinion from D.C. is the language where it says:

11           If the employer or client puts the lawyer's

12           conduct at issue, however, it lodges an

13           affirmative defense or counterclaims.

14   That would seem to be right on point.

15           The lawyer may disclose or use the

16           employer's confidences or secrets insofar as

17           reasonably necessary to respond to the

18           employers/clients contention.

19   So it seems to be quite limited, limited, first, to

20   the affirmative defense as opposed to an offensive use

21   as you're proposing.

22   And, second, to be limited in that context to as

23   reasonably necessary or insofar as reasonably necessary.

24   So it seems to me it is, even under the D.C. ethics

25   opinion which is persuasive at best, quite limited.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          MR. LENHOFF:  Well -- I know the Court's --

2          THE COURT:  Goes on to say on a need-to-know

3     basis.  You cited the New York case.

4          MR. LENHOFF:  Right.  Well, I don't have a

5     problem with the reasonably necessary language in there.

6     But in an employment discrimination case, I mean they're

7     going to -- we'll -- we have a whistleblower claim,

8     discrimination claim, retaliation claim.

9          We will put our case in that he was a good employee

10    and the like and in defending the -- defending the *prima*

11    *facie* case, we are certain the defendant will, will

12    argue, in this case they will argue the plaintiff was

13    not performing competently.  Of course, there's an

14    affirmative defense, too.

15         So we clearly would be able to use privileges in

16    that context.  I think just under the Michigan rule

17    because the Michigan rule provides that confidences and

18    secrecy can be used with respect to rebutting charges

19    of, of improper conduct by the lawyer or wrongful

20    conduct by the lawyer.

21         The problem with the Michigan rule, Your Honor, is

22    it just doesn't speak to this issue of what can be

23    disclosed in an attorney in a general counsel's

24    employment discrimination case against the corporation.

25

Defendant's Motion for Protective Order 7-27-2015

1            THE COURT:  What it does is it says the

2    general rule is you can't disclose, then it has

3    exceptions.  And the exception would -- and I think this

4    is conceded by the defense here, would cover your

5    affirmative defense.

6            But by implication when you have a general rule,

7    that's the default position.  And then if you've got an

8    exception, which apparently you do to the extent you're

9    dealing with his affirmative defense the after-acquired,

10   because it accuses you of or your client of, if not

11   unethical conduct, but I don't think it accuses your

12   client of unethical conduct, but some lack of diligence,

13   let's say, which could be construed as wrongful conduct

14   it would fit.  But the rule doesn't give you any kind of

15   exception for a claiming that you're making.

16           If you look at, and I suggest you do, the comments

17   to the rule, and this is under a section within the

18   comments that say dispute concerning lawyer's conduct,

19   it says:

20               In any event, the disclosure should be no

21               greater then the lawyer reasonably believes

22               it's necessary to vindicate innocence, the

23               disclosure should be made in a manner which

24               limits access to information to the tribunal

25               or other persons having a need to know.

                Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          Which would seem to be the kind of thing you

2          do in a protective order.

3          Quote:  And appropriate protective orders or

4          other arrangements should be sought by the

5          lawyer to the fullest extent practicable.

6          Then the next paragraph says, quote:

7          If the lawyer is charged with wrong doing in

8          which the client's conduct is implicated,

9          the rule of confidentiality should not

10         prevent the lawyer from defending against

11         the charge.

12         Such a charge can arise in a civil, criminal

13         or professional disciplinary proceeding, can

14         be based on a wrong allegedly committed by

15         the lawyer against the client.

16     So I look to that because one of the questions I

17 had in my mind was could this be used outside a

18 disciplinary proceeding.

19     I wondered where it says wrongful conduct did it

20 mean under the rules, in other words, before the

21 Attorney Grievance Commission.

22     The comment I think makes it clear that, no, that's

23 not the limitation, because it says it could be done in

24 a civil case, which is what you have here.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1        When I put all that together, it's quite difficult

2   for me to see the plain language of the Michigan rule,

3   regardless of what any other rules outside of Michigan

4   or any other cases interpreting those rules say.

5        The Michigan rule does not seem to give your client

6   the ability to use confidences or privileged

7   information -- privileged communications, rather, in

8   support of his affirmative offensive claim of employment

9   discrimination.  I'm not really sure, quite frankly,

10  that you need them to prove your case.

11       I mean you've talked about the *Battle* matter and

12  while there are no doubt privilege communications

13  involving that matter, they're no doubt public

14  information in that matter you can use in support of

15  your claim or certainly will attempt to.

16       This isn't a motion to dismiss your claim, I think

17  it's overbroad to say that.  And I don't think the rule,

18  unless you can show me otherwise, it doesn't make an

19  exception for a claim made by your client, it only makes

20  an exception for a claim made against your client or an

21  allegation made against your client.

22            MR. LENHOFF:  Can I respond?

23            THE COURT:  Yes, please.

24            MR. LENHOFF:  First of all, I think certainly

25  within the exception of the concept of the plaintiff not

Defendant's Motion for Protective Order 7-27-2015

1    only being able to respond to the after-acquired

2    evidence argument, but also be able to respond to their

3    affirmative defense.

4        We put in the *prima facie* case.  They will then say

5    he just was not competent, he wasn't performing his job

6    properly.

7        Now in order to show that that's pretense and one

8    way of showing pretense is that the legitimate

9    non-discriminatory reason lacks a basis in fact or is

10   inconsistent with their policies.  That is something

11   which certainly is (inaudible)

12       We're responding in a civil context to an

13   allegation of wrongful conduct.  So I just want to make

14   it clear that it's our position that this right to

15   respond to allegations of wrongful conduct is -- we cite

16   is broader then merely responding to affirmative --

17   merely responding to the after-acquired evidence rule.

18       And we cited that *Golden District Court* case out of

19   California which says that an employment discrimination

20   case, the allegation that the plaintiff was -- that

21   there was a legitimate non-discriminatory reason is an

22   affirmative defense.

23       So, clearly, we think we responded to that as well

24   as the after acquired evidence argument.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1      Now a couple more points, Your Honor.  I do think

2   it's important to make it clear that information that's

3   already generally accessible to the public is not within

4   the scope of confidence.

5      For example, hasn't been mentioned, wasn't

6   mentioned by Mr. Pelton and I don't know that it was

7   clear in the briefs, this is a public hospital.  A lot

8   of this information is obtainable under FOIA in

9   Michigan.

10      In fact, this *Tonya Battle* case that was a case in

11   which a patient at Hurley stated he didn't want an

12   African-American nurse treating his child.  It became a

13   cause celeb all over the country.

14            THE COURT:  Was a deposition taken?

15            MR. LENHOFF:  Yes.

16            THE COURT:  Was it sealed?

17            MR. LENHOFF:  Not to my knowledge.

18            THE COURT:  You can use all that, right?

19            MR. LENHOFF:  Yes, I think you can.

20            THE COURT:  Right?  Probably in the court

21   record. So that's my point.

22      My point is, I mean, you'll see it as the case

23   unfolds, but I don't think that your in ability to use

24   confidential communications, attorney-client

25   communications and privileged communications in support

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

 1   of your employment discrimination claim is preclusive of

 2   the claim necessarily.

 3            MR. LENHOFF:  Also, the plaintiff's

 4   October 2014 complaint to the board of -- Chair of the

 5   Board of Managers -- and that's an important element of

 6   proof in this case, I think that would be obtainable

 7   under FOIA in this case involving a public sector

 8   defendant.

 9        And one of the arguments we make quite strongly is

10   this complaint was made on October 7, 2014.  In that

11   complaint, Mr. Smith said that he felt he was being

12   discriminated against so to speak.

13        He felt he was not being treated fairly with

14   respect to not only his position that Haitians could not

15   dictate the race of treating personnel, but, also, he

16   felt that an African-American female should have been

17   hired as a staff at Hurley and was not.

18        Now he stated all of this in a complaint to

19   Mr. Bekofske, the Chief of the Board of Management at

20   Hurley.  And I mean that, that presumably would be

21   obtainable under FOIA.

22        And you see, I worry, too, with respect to what's

23   privileged and what's not privileged.

24            THE COURT:  Anything that's under FOIA --

25   anything that would have to be under the FOIA statute I

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   think cuts against his argument that it's privilege and

2   your argument that you need it for the privilege, right?

3        The more it's under FOIA, the less you need it as a

4   matter of attorney-client privilege, right?

5            MR. LENHOFF:  I would think something's

6   available under FOIA, *ipso facto*.  It's just no argument

7   at all we can use it in this case.

8            THE COURT:  About whether it's, in fact,

9   available under FOIA, because the statute has its own

10  limitations as well, which are sometimes asserted.

11       But assuming that it is, legally, you're entitled

12  to something under a FOIA, but that's cutting against

13  the argument you're making today which is it's extremely

14  important that you have privilege information and be

15  able to use it in order to successfully prosecute your

16  employment discrimination claim.

17       Be that as it may, we're stuck with the rule, like

18  it or not, there it is 1.6.  It says what it says.

19           MR. LENHOFF:  It does, but it just doesn't

20  speak to this kind of case.  This kind of case -- it's a

21  different case.

22       That case speaks to a situation where an attorney

23  is representing one or two or three or several clients.

24  I don't think it speaks to -- doesn't speak to an

25  employment discrimination case.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1        THE COURT:  It could have said -- he could

2   have made an exception to an employment discrimination.

3   He didn't do that.

4        He could have made an exception for wrongful

5   discharge, could have said except when you brought a

6   case against them.

7        But what it says it's limited in the offensive

8   conduct to -- well, it could have, right?

9        But what it says is it's limited in the offensive

10  conduct to fee disputes.

11        MR. LENHOFF:  And wrongful conduct.

12        THE COURT:  No, doesn't say and wrongful

13  conduct, it says to defend the lawyer against an

14  accusation of wrongful conduct.

15        So it's got to be an offensive position in that

16  context or could be used offensively to establish, which

17  is an offensive word, to collect a fee which we all

18  agree this is not a fee collection case.

19        And it's hard for me to get around -- I realize

20  it's not a published opinion by the Michigan Court of

21  Appeals, but the Court of Appeals had a case that looked

22  an awful like a fee collection case.

23        But the plaintiff's counsel, for whatever reason,

24  decided to do it under something that it said that's not

25  a fee collection case.  You can't use it.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          MR. LENHOFF:  That's not a case like this at

2     all.  I know the case you're talking about cited by the

3     defendant.

4          THE COURT:  It would suggest to me at least

5     the Michigan court's interpreting their own rule of

6     professional conduct are very narrow about what they

7     will allow.

8          MR. LENHOFF:  Let me just say this.

9          THE COURT:  Sure.

10          MR. LENHOFF:  I don't think -- I don't think

11     that they said that.  First of all, it's unpublished.

12          THE COURT:  I get that.

13          MR. LENHOFF:  Second of all, really --

14          THE COURT:  They had Doug Shapiro on that

15     panel.  I mean he's not exactly a bleeding heart for the

16     defense.

17          MR. LENHOFF:  That is a fair statement.  But

18     that, that case -- I mean that was a case in which a law

19     firm was essentially bringing an action to collect fees

20     against the client to get -- to obtain their fees

21     against the bankrupt client.  That was the motive of

22     that case, wasn't a case involving racial discrimination

23     or a whistleblower case.

24        So, I mean, just for two reasons I don't think that

25     is a persuasive case.  It's completely dissimilar from

Defendant's Motion for Protective Order 7-27-2015

 1  this case.

 2          THE COURT:  It's all we've got interpreting

 3  this rule, right?

 4          MR. LENHOFF:  It's weak.

 5          THE COURT:  It is what it is.

 6          MR. LENHOFF:  They're other Michigan cases.

 7  There's that *Moran* case, that's a *Toussaint* case that

 8  doesn't deal with this issue.

 9      We did not find any Michigan cases on dealing with

10  this issue, so I think -- but that fraudulent conveyance

11  act case certainly should not be what the Court uses.

12  It's just too different.

13      I just think at this stage when really we haven't

14  done any depositions in this case.  We have -- discovery

15  doesn't end until early next year, it's in the early

16  stages.  I just think it's just too early to enter this

17  type of order.

18      And then I also think it's really going to be as to

19  determining what's privileged and what isn't privileged.

20          THE COURT:  I give you that.  I think this

21  case, depending on how much information we're talking

22  about, we don't even know that.  But if there's a lot of

23  this information that we're taking about, then we're

24  going to have -- it's going be a tedious task.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    Because, first, we're going to have to determine

2  whether it's even attorney-client communication, which

3  first of all many people don't know what that is.  They

4  think everything you say to a lawyer and what a lawyer

5  says back to you is a protected privilege.  Not so.

6    There's a definition of law.  Roughly the

7  definition is it's seeking -- getting legal advice, so

8  there's that question.  And there's going to be a

9  question of which hat he was wearing during these

10  commmunications.

11    Then there's also a question of for what purpose is

12  it being used that is in the offensive or defensive

13  conduct.  I have some suggestions how we can deal with

14  that.

15    MR. LENHOFF:  That second point now the

16  Court's dealt with two or three times, what hat was he

17  wearing; legal advisor, administrator, manager or legal

18  advisor.  It's important.  It's a significant point.

19    THE COURT:  Just suppose Mr. Pelton will say

20  no, he said he was a manager.

21    MR. LENHOFF:  I guess someone will have to

22  figure that out.

23    As to the rest of their protective order, they set

24  up a system where the defendant has too much control.

25  We have to submit documents to the defendant.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    To the extent Smith believes they need to reveal

2    Hurley confidences and secrets in response to the

3    after-acquired evidence defense, we should be required

4    to submit those to Hurley's counsel, then Hurley or

5    Mr. Pelton decides whether or not we can go forward with

6    this.  I object to that.

7    So, basically, I think to the extent the Court is

8    going to rule on this issue, I guess you are, it's

9    before you, I ask -- respectfully request that the Court

10   be particularly careful regarding this issue of which

11   hat, whether this governs statements and information

12   that Bill Smith learned as an advisor or as a manager as

13   opposed to an attorney.

14   And then I also think that it's got to be clear

15   that any order dealing with defensive use doesn't apply

16   to the after-acquired evidence or most significantly in

17   responding to their defense in the whistleblower and the

18   employment discrimination case.

19   In other words, they will bring up Mr. Smith was

20   apparently not performing competently in order to attack

21   that to show so that it's pre-textual.  We have a right

22   to respond to that.

23   As the Court pointed out, it is a civil allegation

24   of wrongful conduct.

25   THE COURT:  What you're saying is there's

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   wrongful conduct asserted in the affirmative defense and

2   there's also wrongful conduct asserted in the primary

3   defense.

4            MR. LENHOFF:  Right.  Right.

5            THE COURT:  Right, as the reason for the

6   discharge.  Whereas the affirmative defense doesn't deal

7   with the reason for the discharge, just deals with

8   cutting off the spigot on damages.

9            MR. LENHOFF:  Exactly.  Exactly.

10        We're entitled to use confidential information as

11  to both of those issues; both the damages after-acquired

12  evidence and to liability defense.

13           THE COURT:  Okay.  Now, obviously, I can't

14  rule perspectively on this distinction between which hat

15  he's wearing, that's going to come up with each

16  communication individually; that's too perspective at

17  this point.

18           MR. LENHOFF:  I know that, but I, but I -- to

19  the extent you're going to write on this, it sounds like

20  you are.

21           THE COURT:  Maybe; that's an evolving question

22  as I sit here.

23           MR. LENHOFF:  Well, it's an interesting

24  question.  I can tell by how well prepared the Court is

25  today based on these --

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          THE COURT:  I have a question for you, though.

2      And this was raised in the reply brief and it

3  already struck me before it was raised in the reply

4  brief.

5      But how is the *Battle* case at all necessary for you

6  to prove your claim of discrimination?

7          MR. LENHOFF:  The plaintiff went to Hurley and

8  told Hurley that it should not engage in discrimination

9  with respect to nurses.

10     In other words, the plaintiff went to Hurley and

11  said you cannot do what this man wants you to do, what

12  this man with the Swastika wants you to do, he wants you

13  to not assign people like *Tonya Battle*, black nurses, to

14  treat this child.  You can't do that.

15         THE COURT:  I see an objection.

16         MR. PELTON:  I'm not sure where Mr. Lenhoff's

17  going with this but it sure sounding like it could get

18  into privilege communication.

19     He's talking about what Smith advised the medical

20  center.  I don't even know what the CEO's reaction to

21  that was.  This is exactly the kind of thing we have to

22  be very cautious about.

23         THE COURT:  Mr. Lenhoff, can you state it very

24  generally, since we don't have an order yet, about

25  sealing this record.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1              MR. LENHOFF:  Look at Plaintiff's Exhibit 1.

2      That is the complaint.  The chair of Hurley Medical

3      Center dated 10-7-2014 --

4              THE COURT:  Got it.

5              MR. LENHOFF:  It is mentioned in here.

6      (inaudible) (inaudible).

7              THE COURT:  Okay.

8              MR. LENHOFF:  Now our contention in this case

9      is going to be Mr. Smith objected to the race based

10     assignments, one of the reasons why he was fired.

11     That's part of our whistleblower claim.

12         Under the whistleblower statute, when a public

13     entity is a defendant, an intracompany complaint

14     constitutes going to a public agency under the WPA.

15             THE COURT:  There's also something on pages

16     five through six April 2014.  I presume that's part of

17     what you're claiming?

18             MR. LENHOFF:  That's correct.

19             THE COURT:  Okay.

20             MR. LENHOFF:  And this is what I mean about

21     Mr. Pelton seeking to cripple our liability case.

22             THE COURT:  That's not before me.  This isn't

23     a motion to dismiss.

24             MR. LENHOFF:  But he wants you to determine

25     the evidence in all of our claims.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    And it's especially preposterous in that this

2    wasn't a complete (inaudible) Board of Managers

3    regarding the -- (inaudible) doesn't deal with -- it

4    deals tangentially with what Mr. Smith's position was on

5    legal issues.

6        But this is why not only is the *Battle* case

7    relevant very important and what really makes this whole

8    argument just really difficult to accept is how widely

9    publicized this case was.  It was -- it was a national

10   cause celeb.

11           THE COURT:  I understand that, but the cases

12   you cited, I looked at them.  I looked at the California

13   case, I looked at the Third Circuit case.

14       There's another one I looked at as well, and what

15   struck me, first of all, is that those are generally

16   distinguishable because they're motions to dismiss, they

17   dealt with issues whether you state a claim or not which

18   is not what's before me.

19       But all those cases seem to suggest as pointed out

20   in the reply brief, in fact, there are times when you

21   may not be able to get everything in you want because

22   the privilege, if not sacrosanct, very important and we

23   don't allow privileged information out except in very

24   narrow circumstances.

25       I think of it in analogously to when the federal

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

 1   government prosecutes a criminal case and the only way

 2   they can prosecute that criminal case is to use things

 3   that are considered national security secrets.  And

 4   sometimes they have to drop their prosecution because

 5   they have to reveal things that cannot be revealed in

 6   court.

 7        Isn't that the case at least to some extent?  I

 8   mean assuming that parade of horribles were to happen

 9   here, you could not prove your case without using

10   information which is prohibited by the Rules of

11   Professional Conduct.

12        Aren't people who are attorneys sometimes in that

13   unfortunate position, just like the government is in the

14   unfortunate position being unable to prosecute someone

15   because they can't reveal security secrets?

16             MR. LENHOFF:  I don't think it's that similar.

17   This is a case in which plaintiff allegedly was fired

18   for protesting against racial discrimination.

19        Plaintiff contends a substantial reason he was

20   fired is because he went to the CEO and told the CEO

21   that it was improper for Hurley to make race-based

22   assignments.  And that --

23             MR. PELTON:  Again, I'll object.  I don't know

24   the context of that conversation.  We don't know if it's

25   privileged conversation.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1        I have to say this is going way beyond what's

2    probably necessary for the limited ruling we're seeking

3    today.

4              THE COURT:  Is that your complaint, Mr.

5    Pelton?  You've got a retaliatory discharge, I assume?

6              MR. LENHOFF:  Yes, Your Honor.  The complaint

7    is exhibit --

8              THE COURT:  I've got the complaint in front of

9    me.

10             MR. LENHOFF:  Beginning paragraph 15 a number

11   of occasions plaintiff complained -- beginning at

12   paragraph 15:

13             On a number of occasions, plaintiff

14             complained that defendant was engaged in

15             racial discrimination.

16             Paragraph 16.  April 2014, defendant refused

17             to allow plaintiff to hire an

18             African-American female for a staff attorney

19             position at defendant Hurley.

20             In October 2014, plaintiff filed a complaint

21             pursuant to defendant Hurley's Executive

22             Employee Relations Policy with chairman of

23             the Board of Managers.

24             In the said October 2014 complaint,

25             plaintiff stated defendant engaged in racial

Defendant's Motion for Protective Order 7-27-2015

1       discrimination.

2       Paragraph 19:  Plaintiff's 2014 complaint

3       plaintiff cited plaintiff's opposition to

4       defendant's mishandling of neonatal

5       intensive care unit race discrimination

6       matters involving (inaudible).

7            THE COURT:  Okay.

8            MR. LENHOFF:  So -- and it's interesting we

9  put this in the complaint.

10     Mr. Pelton didn't object to it now.  I don't know

11  why he's getting up and objecting to it now.  These are

12  at the heart of our whistleblower and retaliatory

13  discharge claims.

14          THE COURT:  Okay.  But looking at paragraphs

15  15 to 19 of your first amended complaint which I have

16  before me, for example, paragraph 16 refusal to hire an

17  African-American female staff attorney doesn't seem to

18  have anything to do with attorney-client privilege, it

19  has to do with a staffing decision within the hospital

20  which would be in his managerial role.

21          MR. LENHOFF:  True.

22          THE COURT:  Okay?

23     And if he made a complaint pursuant to the

24  Executive Employee Relations Policy -- I'm not going to

25  rule on that right now, but that doesn't necessarily

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1  imply that there's attorney client communication.

2       What I'm wondering is why would you need

3  attorney-client communication?  Don't tell me what they

4  are right now, but why would you need them?

5            MR. LENHOFF:  Well, also, also in paragraph

6  19 -- 18 and 19 in the said October 2014 complaint,

7  plaintiff stated that defendant engaged in racial

8  discrimination.

9            THE COURT:  That was in his employment

10  complaint, that's not attorney-client communication.

11            MR. LENHOFF:  I assume you feel same way --

12  true.

13       Then in October 2014, plaintiff said defense

14  mishandled the race discrimination matter.

15            THE COURT:  Again, in an attorney complaint,

16  not attorney-client communication.

17       It seems you're laying out your case right here

18  without using any attorney-client communication, it

19  appears.

20       But that's my -- which gets back to my question why

21  would you need it?  I don't think you're allowed under

22  the rule, but let's just -- for sake of argument I don't

23  understand why you need it.

24            MR. LENHOFF:  What's -- what's -- well, I'm

25  pleased that the Court made the statements you just did

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1  because it's clear to me that the complaint to

2  Mr. Bekofske and the opposition in the staff hiring of

3  Miss Dennings (ph.) we're not even arguably within

4  attorney-client.

5           THE COURT:  It's not a ruling, it's an

6  observation.  It's, obviously -- that issue can come

7  before me later but just looking at how you plead it, it

8  appears that you're not pleading communications, you're

9  pleading employment related managerial related stuff.

10    I don't see anything in these paragraphs that says

11 advice was sought, advice was given in that context.  I

12 don't see that here.

13    So why would we need to go there? At least that, at

14 first blush, looks that way.  I'm not ruling on that.

15           MR. LENHOFF:  I understand.  I guess, I guess,

16 Your Honor, the task before this Court is, you know, to

17 craft, to craft an order that, that accommodates the

18 confidentiality interest but does not derogate from the

19 interest of this plaintiff to assert a racial

20 discrimination and whistle blower retaliatory discharge.

21           THE COURT:  I'm not ruling on a motion to

22 dismiss.

23    So, you know, I look across at plaintiff's counsel

24 table, they're both skilled attorneys.  I suspect

25 they're going to be able to -- I won't say whether

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1  you're going to survive motions or not, that's not

2  before me.

3      But I suspect that you will be able to continue to

4  prosecute this case as successfully as you're going to

5  be able to prosecute it without using attorney-client

6  communications.  That's, that's just an observation not

7  a ruling.

8          MR. LENHOFF:  Let me see.

9      (After a short delay, the proceedings continued)

10      Any other questions for me, Your Honor?

11          THE COURT:  Well, it's interesting because I

12  wrote down in my notes after reading your brief, but

13  before reading the reply brief, need to shut the barn

14  door before the horses get out.  And lo and behold, I

15  read in the reply brief that exact expression.

16      It strikes me that it doesn't do you any harm to

17  have a protective order in place so that we can deal

18  with these issues prospectively rather than wait for

19  these communications to come out.  They're out there.

20      And we'll deal with them retroactively is never a

21  good idea when you're dealing with confidential

22  information, because then it's out.  You can't put the

23  horses back in the barn or snakes back in the can,

24  whatever expression you want to use.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1      So that does strike me that why not have a

2   protective order?  Your brief, while I realize that your

3   primary position is we don't need a protective order,

4   you then take the alternative position, as good lawyers

5   do, that I realize you might see it differently, Your

6   Honor.  And, okay, we do a protective order, but let's

7   just do it differently then the way Mr. Pelton says.

8      But my question is -- really gets back to your

9   first argument.  Why not?  I mean it seems to me if we

10  let the horses out of the barn, they're out.

11     I'm sure you can appreciate Mr. Pelton's position

12  trying to protect information.  You can't wait until

13  it's out there.

14          MR. LENHOFF:  But I -- I mean I respect Mr.

15  Pelton, I think he's a fine attorney, but there's an

16  element of tactic in this motion not merely protecting

17  confidences.

18     There's an element in this motion which the

19  defendants are seeking to undercut the substantive

20  claims here, so I do believe there's a tactical element

21  here.

22     I am not adverse to a protective order given that

23  there's a policy and procedure for everybody as to how

24  we resolve this.

25     I think, given there's a dispute, we should be able

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   to bring it straight to the Court, straight to you.

2          THE COURT:  Let me make a suggestion and this

3   is more of the Court thinking out loud for a minute.

4          Assuming I enter a protective order and you may

5   then come back with various communications, ask for *an*

6   *in camera* inspection or ruling, and that's fine, but --

7   and I don't want to know how many communications we're

8   talking about; maybe talking about a little or a lot,

9   the Courts fine with that.

10         But if we're talking about a lot, at some point it

11  becomes burdensome to the Court to have you keep coming

12  back to this box of 4000 communications.  I don't know

13  what's it's going to be.

14         The alternative is to take it piecemeal, which is,

15  let's see how much there is.  If the volume is going to

16  be much, would be for the Court to appoint a special

17  master, someone everybody could agree to.  I can think

18  of some experts, I'm sure you can, who can then review

19  that report.

20         But I don't want to punt it to a special master if

21  it's not a lot we're talking about, may not know.  But

22  I'm curious to throw that out there for both sides or at

23  least put it in the back of your heads.

24         MR. LENHOFF:  Well, we, really don't know how

25  many communications are at issue, I mean.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   Given that this administrative attorney distinction

2   is respected, given that the FOIA distinction is

3   respected, given that the complaint's being totally

4   usable are respected, there may not be that many

5   communications.  So --

6       THE COURT:  I wonder that myself sometimes in

7   Sicilian culture, (inaudible) sometimes making a

8   mountain out of molehill.  But I don't think Mr.

9   Pelton's making a mountain out of the fact that

10  attorney-client communications are important.

11  He's got a duty to his client to protect them, keep

12  them from getting out there, at least circumscribed, but

13  we may not be talking about that much.

14      MR. LENHOFF:  This is a very serious matter.

15  I had an orange for breakfast so the reference to

16  Sicilian culture (inaudible).

17      THE COURT:  There's that same thing he plays

18  for his grandkids. (Inaudible)

19      MR. LENHOFF:  The orange.  Michael sits at

20  this little chair.  He has an orange, then he dies.

21      THE COURT:  I think I'll avoid oranges for a

22  while.

23      MR. LENHOFF:  Even the assassination --

24      THE COURT:  He's at the fruited cart, right?

25      MR. LENHOFF:  So, geez, I did have an orange

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   for breakfast but --

2          THE COURT:  You feeling okay?

3          MR. LENHOFF:  Yes.  That's true we may be

4   making --

5          THE COURT:  (Inaudible)

6          MR. LENHOFF:  Perhaps.  Perhaps.

7          THE COURT:  Good luck to the person who

8   transcribes the transcript.

9       Thank you, Mr. Lenhoff.

10      Mr. Pelton, I know you're dying to respond.  I have

11  two questions right off the bat.

12         MR. PELTON:  Sure.

13         THE COURT:  I was unaware of the other

14  protective order and so I guess I need to understand why

15  the other protective order that's in existence already,

16  docket number 13, doesn't cover this situation?

17      What do we need to add?

18         MR. PELTON:  Because it says it doesn't.  This

19  is part of the problem.  I really appreciate Mr.

20  Lenhoff.  He's a top flight attorney, absolutely first

21  rate.  I thought the discussion right now is very

22  illuminating.

23      But I do think there's a parade of horribles that

24  don't exist.  We do have to be vigilant and protect the

25  privilege.

                Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    This is the kind of discussion when we tried to

2  work out this order.  You can see in paragraph 15 it

3  ends up punting.  We couldn't come to agree on it.  The

4  parties dispute what extent such disclosures are

5  authorized in this case.

6         THE COURT:  So you left it to another day.  I

7  got it.

8         MR. PELTON:  Then we filed our motion.

9    And so I think the Court really asked a good

10  question of Mr. Lenhoff; and that is, what's the harm.

11    It occurred to me suddenly not only is there no

12  harm to Mr. Lenhoff or Mr. Smith, it, in fact, protects

13  them because I don't believe Mr. Smith or Mr. Lenhoff

14  unwittingly reveal a confidence.  And so this type of

15  order can be in place to protect them.

16    And I hear a tinge of Mr. Lenhoff's concern that

17  we're going to, you know, over do it or over, over

18  designate or something.

19    But let me just point out that the complaint that's

20  been discussed here is attached to the brief.  We've

21  produced it.  Why didn't try to designate it as

22  confidential.  We didn't claim it was privileged.

23    There are some attachments that we claim is

24  privileged and produced in a privilege log, but not the

25  complaint itself.

Defendant's Motion for Protective Order 7-27-2015

1      So we're going to proceed in good faith and if we

2  don't, we'll hear about it from this Court.  So I think

3  we simply need this procedure set up.  I'm confident

4  that the Court fully understands this.

5      Again, I think the California Court captured it

6  well on 503 and 504 of the *General Dynamics* opinion:

7              Whether the privilege serves as a bar to

8              plaintiff's recovery will be litigated and

9              determined in the context of motions for

10             protective order or compel further discovery

11             responses as well as at the time of motion

12             for summary judgment.

13     It is premature to make any of those kinds of

14  rulings now, we just need the framework within which

15  both parties are going to work and which protects, I

16  think, Mr. Smith from revealing confidences he

17  shouldn't.

18     So the only other point I wanted to make is in

19  addition to the -- I think it *Chaban* or c-h-a-b-o-n

20  unpublished Court of Appeals' opinion you and Mr.

21  Lenhoff discussed, there is the history of the rule

22  itself.

23     In the separation it took from the ABA rule that I

24  think clearly states what Michigan's intent was with

25  respect to this rule.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    And while it could lead to some harsh results in

2  certain kinds of cases, it is a difficult balance, but

3  it's a balance the court has to strike.

4    The First Circuit's opinion in *Siedle* I think talks

5  about that balance, but also talks about how sacrosanct

6  the privilege is.  That's part of what goes along with

7  being an attorney, whether in-house or outside of

8  counsel.

9    So I don't think I have anything else to respond to

10  again unless the Court has any other questions.

11    THE COURT:  I have one other question.

12    Mr. Lenhoff said if we focus on the affirmative

13  defense of after-acquired evidence which just deals with

14  cutting off damages.

15    But Mr. Lenhoff has said that in giving a reason --

16  that isn't your primary defense to his claim, giving a

17  reason for the discharge, you also you either are or he

18  presumes will be pointing to his wrongful conduct or not

19  doing his job properly.

20    There's got to be -- we know about the burden

21  shifting in employment cases, right?  He makes his prima

22  facie case.  If he makes it successfully, you have to

23  come up with a legitimate reason.

24    When you give that legitimate reason, doesn't that

25  come under the exception under 1.6 of the Michigan Rules

Defendant's Motion for Protective Order 7-27-2015

1   of Professional Conduct?  Not just the affirmative

2   defense, but if you're accusing him of --

3           MR. PELTON:  It's a question of whether a

4   charge of alleged misconduct is made in articulating our

5   non discriminatory or non retaliatory reason which is

6   not an affirmative defense, it's a burden shifting, but

7   we only need come forward with a reason.

8       Yeah, I mean if Miss Gavulic in her testimony opens

9   that door and cites to something privileged, it's waived

10  right.

11      So, again, as the *General Dynamics Corp* says, it

12  depends on the context.  I fear we will have to be back

13  in front of you to make those determinations or maybe we

14  can work through them ourselves.  I do want to say one

15  other thing.

16      There is -- I mentioned this early on.  We did get

17  a big stack 2500 pages of documents.  It appears a

18  considerable number of those are privileged.  I don't

19  know that they're particularly relevant.  And it's not

20  an issue for today, it's something we need to talk

21  about.

22          THE COURT:  Is there anything you can

23  designate as privileged under the existing protective

24  order?

25          MR. PELTON:  We can designate them as

Defendant's Motion for Protective Order 7-27-2015

1   confidential.

2          THE COURT:  Right, as confidential, on the

3   basis of privilege is what I mean.

4          MR. PELTON:  I suppose we could.  But then

5   we're required, under 10, to seek an order pursuant to

6   Rule 5.3 that it's confidential in order to file it

7   under seal.  So I think we're trying to get beyond that.

8       I don't think this order quite gets us there.  You

9   might be able to amend it or supplement it or something

10  with a few paragraphs but --

11         MR. LENHOFF:  Your Honor, I object.  He's

12  bringing up issues that were not in the motion in

13  rebuttal to this issue of this document response.

14      I didn't have a chance to respond to that, so I

15  object to it.  It's not before you.

16         MR. PELTON:  I said it's something we would

17  have to work out.  I just wanted to give the Court a

18  sense there could be a substantial amount of

19  information.  It's something we, we --

20         THE COURT:  I don't think there's anything

21  unfair about that, Mr. Lenhoff.

22         MR. PELTON:  I'm not casting aspersions at

23  all, it's something we have to talk about.  We agreed we

24  would do that.

25

Defendant's Motion for Protective Order 7-27-2015

1    So I don't apologize that I was arguing for

2  something I'm not.  I'm not looking for any sort of

3  direction or ruling on it.

4         THE COURT:  I think I'm clear with the narrow

5  scope of what I have to rule on is.

6    Okay.  Anything further?

7         MR. PELTON:  No, Your Honor.  Thanks very

8  much.

9         THE COURT:  Thank you.

10    I think I'm going to proceed a little bit in

11  unusual fashion because I want to make some general

12  comments about what I think are the issues before the

13  Court and where I think the law takes me.

14    But then I want to discuss with you, because I do

15  think, for starters, that we need a protective order in

16  this case that addresses this since it does appear in

17  paragraph 15 of the existing protective order, which is

18  docket number 13, that the parties punted on this issue

19  because they couldn't work it out.  I get that.  That

20  happens.

21    You agree to what you can agree to, you put that in

22  and you leave the other issues for another day.  But

23  today's the other day.

24    So I'm going to give you my thoughts and

25  observations so you know what my mind is on these

Defendant's Motion for Protective Order 7-27-2015

1   issues.

2        But then the question will be at the end, after

3   I've said what I'm going to say, whether you really want

4   the Court to go back in chambers and write your

5   protective order or whether you think that you can, in

6   light of my rulings, put together one jointly.

7        And it doesn't need to be a stipulated protective

8   order.  If you want to take exception to it, fine.  But

9   if you think you can make a protective order that

10  reflects my rulings, I'd rather have one that you two

11  work out in the nature of protective orders.  You have

12  to deal with them over and over again, it's better if

13  you can work it out then if you can't.  Obviously, if

14  you can't, I'll just draft it, but neither side may like

15  what I draft, so you have more control you draft it.

16       Usually I draft my own orders, but in this case

17  after all I say, I think you can then decide which

18  direction you want to go.  But careful what you ask for

19  if you want me to draft it, because you may not like it.

20       So first, first of all -- and this motion is not

21  about the dismissal of plaintiff's claims or his right

22  to bring this lawsuit.

23       And for that reason, I find many of the cases that

24  were cited by the plaintiff which affirm other

25  jurisdictions, really all of them, not on point because

Defendant's Motion for Protective Order 7-27-2015

1   it seems to me that the major cases that you cited were

2   in the context of ruling on the pleadings and those

3   cases use language such as at the *demurer* stage and many

4   states still use that language, and they are clearly

5   looking at the adequacy of pleadings, they're talking

6   about whether dismissal can occur.  And that's not

7   what's before me.  They seem to sort of peripherally

8   talk about privilege.

9        So, for example, the *Kachmar* case v *Sunguard Data*

10  *Systems*, which is the Third Circuit case 109 F.3d 173,

11  the Court of Appeals holds:

12            That the former employee stated *prima facie*

13            case of discrimination --

14            So it's a *prima facie* case issue.

15            The possibility that retaliatory discharge

16            claim would implicate a communication.

17            Subject to communication did not compel

18            dismissal in that case.

19            And the duty of confidentiality under

20            Pennsylvania's rules of conduct did not

21            preclude a retaliatory discharge claim.

22       Well, nobody's saying or I don't that the duty of

23  confidentiality precludes handling a discharge claim.

24       But, in and of itself, it may be difficult, more

25  difficult, perhaps, to prove a discharge claim because

Defendant's Motion for Protective Order 7-27-2015

1   of those rules, but the rules are what they are.

2          And I gave the analogy to the situation with the

3   government's trying to prosecute a claim that can't go

4   forward with it because of the need to use privilege

5   information or national security to protect their

6   information.  That is possible, but we don't know that

7   to be the case here.  This is not a motion to dismiss.

8          And even, as I walked through the complaint with

9   Mr. Lenhoff, it would appear that even in his complaint

10  which the defense agrees does not reveal privilege

11  communications, seems to be able to, you know, work

12  through a case whether that's a suspicious pleading or

13  not that's not before me, even there doesn't seem to

14  refer to privilege communication, so that's not an issue

15  here.

16         Second, the parties both seem to agree that the

17  Court should play some role in balancing the right to

18  litigate against the protection of attorney-client

19  communications.

20         Mr. Lenhoff and his team agree that attorney-client

21  communications are something that is important to

22  protect and they understand that.

23         And I think on the other side the right to

24  litigation is respected as well.  That's the balancing

25  act for the Court.  The cases cited by both sides talk

Defendant's Motion for Protective Order 7-27-2015

1  about that balancing act and that's what the Court has

2  to do.

3      Third, and I said this during the argument, but

4  I'll say it again, I do not see the defendant's accusing

5  the plaintiff of unethical conduct.  In fact, I concede

6  that they're not but, rather, of perhaps incompetence or

7  lack of thoroughness as to a particular issue involving

8  the scrutiny of medical or bills from a medical

9  malpractice law firm.  For whatever that's worth, I make

10  that observation.

11      I do think that much of what goes on here does

12  necessarily stray into the realm of hypothetical and

13  premature as the plaintiff's has pointed out, but as I

14  also mentioned from the bench, I do think it is

15  important to close the barn door before the horses get

16  out because in the nature of confidential

17  communications, privilege attorney-client

18  communications, once they're out they're out.

19      So I don't think that having a mechanism in place

20  to protect their disclosure is problematic, I think it's

21  actually a good thing.

22      Actually, I agree with the defense that it's not

23  just a protection to Hurley, it's actually a protection

24  to the plaintiff, because he's an attorney.

25      And without a mechanism in place, via protective

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   order, he will be proceeding at his risk to reveal

2   things that may or may not be privileged, but it would

3   be at his risk as to whether they are privileged whether

4   they're permitted to be revealed.  And once he does,

5   he'll subject himself to the potentiality of

6   disciplinary proceedings brought by Hurley.

7        So I think it's to the advantage both sides, is my

8   point, to have a mechanism in place and protective order

9   in place.

10        Both parties -- another observation.  Both parties

11  appear to agree that some disclosure may be made subject

12  to the after-acquired evidence, affirmative defense and

13  as we heard in oral argument, I think the parties are in

14  agreement that if wrongful conduct is at issue, even in

15  the burden shifting analysis, is that is in the

16  defendant's articulation as to the reasons for the

17  discharge, that those communications can be used in that

18  context under Michigan Rule of Professional Conduct 1.6.

19        So it's to the extent he's defending against a

20  charge or a defense or an affirmative defense of

21  wrongful conduct, that is the exception under which it

22  would be permissible under Rule 1.6.

23        Both parties seem to recognize the appropriate use

24  of protective order in the circumstances.  Indeed, the

25  cases cited by the plaintiff all talk about protective

Defendant's Motion for Protective Order 7-27-2015

1   orders, protective measures, sealing documents and so

2   forth.

3        And I think the parties are in agreement certainly

4   the cases cited by both parties indicate that a

5   mechanism to seal such communications, if they're

6   privileged, is also important.

7        However, such communications need to be limited to

8   exactly what it says in the rule, which is specifically

9   to defend the lawyer or the lawyer's employees or

10  associates against an accusation of wrongful conduct.

11  That's the actual language in Michigan Rule of

12  Professional Conduct 1.6(c)5.

13       The parties agree that the first exception which is

14  confidences or secrets necessary to establish or collect

15  a fee are not implicated here because this is not a fee

16  collection case.

17       I might point out that subsection a of the Michigan

18  Rules of Professional Conduct 1.6 gives a definition of

19  confidence and secret, although the definition of

20  confidences, and I quote, refers to information

21  protected by the client that are privileged under

22  applicable law.  So that basically gets us to the Rules

23  of Evidence and to some extent to common law.

24       I already did during oral argument but the

25  commentary is also helpful to -- in the Rule 1.6,

Defendant's Motion for Protective Order 7-27-2015

1  particularly the section that's entitled dispute

2  concerning lawyer's conduct.  But I already quoted it

3  into the record, so I won't requote it.

4       I don't see as another observation how the *Tonya*

5  *Battle* matter fits within the exception under Michigan

6  Rules of Professional Conduct 1.6(c) 5.  I don't see how

7  it is implicated in defending a lawyer, the lawyer's

8  employees or associates, against accusations of wrongful

9  conduct.

10      Obviously, if the plaintiff somehow can show that

11  later in that context, the context of either dealing

12  with an affirmative defense or dealing with the burden

13  shifting reasons for the discharge, if somehow the

14  reasons for the discharge involved the *Tonya Battle*

15  matter, that could be revisited.

16      But as of today, I don't see any showing that the

17  *Tonya Battle* matter can be used in any other context

18  then the proof of the plaintiff's offensive claim of

19  discrimination.

20      That's not say that that matter can't be used in a

21  matter which doesn't utilize attorney-client

22  communications and privileges protected by the rule as

23  stated in the complaint and conceded by the defendant, I

24  believe in this argument.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1    There's information out there that's, you know,

2  public and is outside the context of attorney-client

3  communications.

4    As Mr. Lenhoff conceded in oral argument, there's

5  somethings he may be able to obtain through FOIA through

6  public records, court records and so forth.

7    But I don't see how attorney-client communications

8  involved in the *Tonya Battle* matter can be -- are

9  necessary or, quite frankly, even if they are necessary,

10  how they are anyway excepted from the Rule 1.6.

11    Under Rule 1.6, on its plain language, I don't

12  think that attorney-client communications and privileges

13  that are subject to that rule can be used in support of

14  plaintiffs offensive claims of discrimination.

15    I did mention earlier that *in camera* review

16  approaches -- is one approach.  The Court is willing to

17  undertake the *in camera* review as necessary going

18  forward.

19    My concern is that if we're talking about a lot of

20  the material, the Court will be overburdened.  If we're

21  talking about the Court hearing from you every two weeks

22  with another document or receiving five, 10,000

23  documents to look at, then I think we need to be

24  thinking about a special master who can look at things

25  and report on them to the Court.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1       But since we don't know at this point the scope, I

2   think any protective order should include an *in camera*

3   review provision with the understanding that the Court

4   may revisit that and appoint a special master later

5   should that become overburdensome on the Court.  I think

6   that language should be included in an order.

7       I agree with the argument made in the defendant's

8   reply brief that the -- this was at page -- it's

9   actually docket entry 17 and it's page six under the

10  page assignment system given by our computer system as

11  opposed to page six that the plaintiff wrote on his

12  actual brief or defendant in their reply brief.

13      But I agree with the defendant that the plaintiff

14  confuses the distinct concepts of ethical rules do not

15  forbid bringing the suit, they don't, but ethical rules

16  forbid bringing a suit, but they do limit the use of

17  client confidences and secrets and I think that's an

18  important distinction.

19      I already mentioned in oral argument, but it's an

20  observation.  We know that it's perspective as to any

21  particular communication, but with each communication

22  that you can't agree is or isn't privileged, we're going

23  to have to look at, well, was it made with the

24  plaintiff's hat as an attorney as opposed to managerial,

25  was it given in the context of receiving or giving legal

Defendant's Motion for Protective Order 7-27-2015

 1   advice, does it fit with then ambit of a true

 2   attorney-client communication.

 3       I can't respectively rule on that, I don't even

 4   have a communication to rule on.  But that's going to be

 5   something that's going to have to be looked at with each

 6   communication.

 7       Hopefully, the first line of defense would be

 8   counsel discussing it.  This is a provision I

 9   particularly liked in the professed language the defense

10   suggests, which suggests if there's a question whether

11   something's privileged, it should first be put to Hurley

12   because Hurley got two choices.

13       Hurley can say, yeah, I agree with you, it isn't

14   privileged, if there's a question, right?

15       Plaintiff can say here's a communication I think

16   it's privileged.  Hurley might say we agree, we don't

17   think it's privileged.  That's one way you avoid coming

18   to court with it.

19       Or Hurley can have the option of waiting on

20   privilege, it's their privilege to waive.  And so that's

21   a possibility.  And if that happens, then you also don't

22   need to burden the Court with it.

23       I think it's very important you have that

24   communication with each other first and you reveal what

25   you're seeking to disclose or use to the party that

Defendant's Motion for Protective Order 7-27-2015

1   holds that privilege to Hurley first before you come to

2   the court.  When you two can't agree, then you come to

3   the Court, I think you know that.

4        The Court should be a last resort not the first and

5   its -- the defendant has to be preliminary given the --

6   preliminarily given the opportunity to waive the

7   privilege or agree something's not privileged or to

8   agree to some mechanism for its use that it's going to

9   occur.

10        I was struck by the language in the *General*

11  *Dynamics* case which was fairly heavily relied upon by

12  the plaintiff.

13        This is the Supreme Court of California case which

14  is the 876 Pacific 2d. 487 California 1994.

15        And in that case at page 503-504, the Court states

16  as follows.

17             Quote:  Similarly the in-house attorney who

18             publicly exposes the client's secrets will

19             usually find no sanctuary in the courts

20             except in those rare instances when this

21             closure is explicitly permitted or mandated

22             by an ethics code provision or statute.

23             It is not the business of the lawyer to

24             disclose publicly the secrets of the client.

25             In any event, where the element of a

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          wrongful discharge in violation of public

2          policy claim cannot, for reasons peculiar to

3          the particular case be fully established

4          without breaching the attorney-client

5          privilege, the suit must be dismissed in the

6          interest of preserving the privilege.

7     We underline the fact that such drastic

8          action would seldom, if ever, be appropriate

9          at the *demurer* stage of the litigation, that

10         is at the pleading stage.

11    Although *General Dynamics* argues claims are

12         barred for disclosure by the lawyer-client

13         privilege that is an issue incapable of

14         resolution and challenge to the facial

15         sufficiency of the complaint.

16    Again, I'm making this ruling at the time on the

17  sufficiency of the complaint.

18         Quote:  Indeed, in most wrongful termination

19         suits brought by in-house counsel, whether

20         the attorney-client privilege precludes the

21         plaintiff from recovery will not be

22         resolvable at *demurer* stage.

23         Rather, in the usual case whether the

24         privilege serves as a bar to the plaintiff's

25         recovery will be litigated and determined in

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1            the context of other motions for protective

2            order or to compel further discovery

3            responses as well as at the time of the

4            motion for summary judgment.

5        And then going on second:

6            Contours of the statutory attorney-client

7            privilege should continue to be strictly

8            observed.

9            We reject any suggestion that the scope of

10           the privilege should be diluted in the

11           context of in-house counsel and their

12           corporate clients.

13           Members of corporate legal departments are

14           as fully subject to the demands of the

15           privilege as outside their colleagues.

16       I think that's very important language.  I know the

17    plaintiff cited this for really a different context

18    which is the fact that courts should take an active

19    managerial role.

20       But in that case, the Court is recognizing that

21    sometimes plaintiffs may not be able to go forward with

22    a prosecution of their wrongful discharge case, because

23    it would require the use of privileged material.

24       But we're not at the stage of making any kind of

25    determination on that here because we don't even know

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   what the material is, we don't know how necessary it is

2   to the plaintiff in prosecuting their case.

3       But the Court makes clear and I respect and agree

4   with it, California Supreme Court, that there's not such

5   a special category for in-house counsel.

6       The fact they have certain burdens that come with

7   being an attorney and having to respect the rules of

8   professional conduct 1.6, the need to keep confidences

9   and attorney-client privilege communications secret.

10      There are exceptions under the Michigan rule which

11  we talked about today, they do apply in this case within

12  the limited context of responding to the affirmative

13  defense and possibly with a limited context of this case

14  of dealing with whatever the defendants says is the

15  reason for the discharge.

16      But the Michigan Rules of Professional Conduct 1.6

17  does not permit their use offensively to establish

18  your -- the plaintiff's wrongful discharge claim.  So

19  those are the limitations that I believe apply.  That's

20  my reasoning.

21      And the question now then would be we do need a

22  protective order.  I've looked at the suggestions made

23  in the defendant's brief as to which would be in a

24  protective order, they look fairly reasonable.

25      But the question is do you think, in light of the

Defendant's Motion for Protective Order 7-27-2015

1   direction I've given you today, you're able to sit down

2   and work out one.

3       One way we can do it is I can give you a period of

4   time to work out one.  If you can't, you can each submit

5   one to me that reflects what I've just said as best you

6   can.  Or I can pick one of them or draft one of my own.

7       But I'd rather you two try, both sides, try to

8   control the process of crafting a protective order in

9   light of what I've just stated, in light of my findings

10  and rulings, that you can live with and that creates a

11  process which will allow you to, as best as possible,

12  work through the privilege issues without coming to the

13  court; if need be, come to the court.

14          MR. LENHOFF:  How long will it take us to get

15  the transcript, because I think we need the transcript.

16          THE COURT:  That's an excellent question.  Now

17  you ask me a technical question.  I'm willing to give

18  you that, you know, whatever time that is.  We can find

19  out with a phone call probably.

20      I think under the existing protective order right

21  now, Mr. Pelton, you're protected by being able to

22  designate things as confidential.  Okay.

23      And then -- and then I do think, based on the fact

24  that paragraph 15 of the existing protective order seems

25  to punt on this issue, you do need something more.

Defendant's Motion for Protective Order 7-27-2015

1      I hope I'm clear on how I see this rule, how I read

2   this rule.  It is what it is in its plain language,

3   that's the context in which you need to move forward.

4           MR. LENHOFF:  Once we get the transcript, I'll

5   be able to meet with Mr. Pelton and try to fashion

6   something.

7      I guess as you say, Your Honor, if we can't fashion

8   something, if we need to submit orders, we'll give it a

9   good faith effort.

10          THE COURT:  I know if you will.

11     So the question is how much time you need because

12  you need to get a transcript.  Give us a little moment,

13  we'll see if we can find out the answer to that.  We may

14  not be able to find out, but we'll try.

15          MR. PELTON:  I want to respond to one thing.

16     We have this current production.  We controlled

17  label it and what I would propose in the interim is we

18  let them know which documents we think are privileged

19  and that we have at least a gentleman's agreement here

20  you're not going to submit anything or disclose anything

21  until you know further.

22     I think it goes without saying, but given the Court

23  asked me if I thought there was adequate protection

24  under that, I want that.

25

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

 1         MR. LENHOFF:  We'll agree to that.

 2         THE COURT:  Okay.  I thought you would.

 3         MR. LENHOFF:  Could I make one point?

 4         THE COURT:  If you wish, sure.

 5         MR. LENHOFF:  I believe the Court clearly

 6  indicated that, that Mr. Smith's complaint to Mr.

 7  Bekofske which was referenced in the first-amended

 8  complaint, the actual complaint as opposed to the

 9  attachments, that's certainly not subject to any

10  protective order.  We can use that.  It's Mr. Smith's

11  employment.

12      I think Mr. Pelton conceded that, but he said,

13  well, there's some attachments you might want to be able

14  to use, but the actual complaint which is several pages

15  that we can use.

16         THE COURT:  Mr. Pelton, do you concede that?

17         MR. PELTON:  May be careful.  My recollection

18  is -- I don't have my associate here with me, he's down

19  in Judge Roberts' courtroom.

20      Actually is that we produced it without designating

21  as privileged.  If so, yes, if that's what we did.

22      My recollection is there were certain attachments

23  we designated as privileged and provided a privilege log

24  on those and didn't produce those.  That's my

25  recollection and my associate might know. I don't know.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   And I'm not going to sit here and read the 40 page

2   document.

3           THE COURT:  I am not either.  I haven't

4   reviewed that complaint.

5       What I was remarking on your allegations in your

6   legal complaint about those complaints made, at first

7   blush, you know, they appear to be complaints made

8   through an employment complaint process as opposed to

9   communications with an attorney an client.

10      Obviously, Mr. Pelton, if you see within those

11  complaints you think need to be redacted because they're

12  privileged, you need to take that issue up.  We're not

13  talking about attachments, we're talking about actual

14  complaint.

15          MR. LENHOFF:  Fine.

16          THE COURT:  It sounds like Mr. Pelton produced

17  those to you without designating it or claiming

18  privilege to it, so I think you can proceed on that

19  basis.

20          MR. PELTON:  I would agree assuming we did.

21  Whether they did or not, this is -- this is a complaint

22  to a complaint procedure.

23          THE COURT:  Well, if they did designate it as

24  confidential, then I'm not ruling on that issue because

25  I don't have it before me, it's not been briefed.

Defendant's Motion for Protective Order 7-27-2015

1      But if they didn't, then it seems to me that

2  your -- I just don't have that in front of me.  I'm not

3  going to rule on a document.

4      And as I said from the bench, I wasn't ruling on

5  that, I was making observations that.

6      And it seems -- probably arguing about something we

7  don't need to argue about because I think we're on the

8  same page about it.

9          MR. PELTON:  I think the hypothetical if we

10  wanted to play it out would be it's conceivable there

11  was in the complaint reference or discussion or

12  quotation of the privileged conversation.

13      It's a very long document.  You know, those could

14  very well be redacted, that kind of thing.  I don't

15  think we had to do that here.  But again I'm without my

16  associate here confirming it, I'm not making a firm

17  representation.

18          THE COURT:  I will give you the direction, Mr.

19  Pelton, since the issue's been brought up by Mr. Lenhoff

20  it's probably worth you and your associate getting your

21  noses into that complaint soon, so that if you see

22  something that is of concern, you get a letter out right

23  away asserting that privilege.

24      But if you haven't produced it subject to, again

25  designated as confidential, presumably it's not.

Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1          MR. PELTON:  I agree.  And we did a big

2   production and I think it was included, I'm just not

3   sure.

4          THE COURT:  Look at it.  If you had an

5   inadvertent waiver you're on notice that Mr. Lenhoff is

6   taking this position and if there's an inadvertent

7   waiver, let him know right away.

8       Is that satisfactory to everyone?

9          MR. PELTON:  We did do a privilege log.

10          THE COURT:  Presumably you would have

11   designated it on the privilege log if you thought it was

12   okay?  So what do we know?

13          THE CLERK:  I've no information.  We need to

14   call and find out.

15       (Inaudible)

16          MR. PELTON:  Can I suggest 10 days after

17   receipt of the transcript of it or after it gets filed?

18   We order it within ten days of receipt.  I'm not sure we

19   need it, but if Mr. Lenhoff wants it.

20          THE COURT:  Mr. Lenhoff, does that sound good

21   10 days after receipt?

22          MR. LENHOFF:  We have 10 days to agree on an

23   order or else provide you with our proposed order.

24          THE COURT:  Right.  And exactly.  Agree on an

25   order or give me a proposed order.  And like I say, I

                Smith v Hurley Medical Center 15-10288

Defendant's Motion for Protective Order 7-27-2015

1   may pick one, meld one, or I'd write my own. I'd rather

2   you have the first crack at it.

3       You know, I know practicing law, I always prefer to

4   craft my own protective orders then have some judge who

5   doesn't know anything do it for me. So we'll do that.

6       Now you have some control over how fast you're

7   going to get that transcript, presumably by whether you

8   pay an expedition fee, I'll go on by when you receive

9   it.

10       Anything further?

11           MR. LENHOFF: Nothing from plaintiff.

12           MR. PELTON: Nothing, Your Honor.

13           THE COURT: Thank you very much.

14       (Whereupon this hearing concluded at 11:39 a.m.)

15

16             CERTIFICATE OF TRANSCRIBER

17

18     I do hereby certify that the foregoing is a correct

19   transcription from the digital sound recording of

20   proceedings in the above-entitled matter on the date

21   hereinbefore set forth and

22   has been prepared by me or under my direction

23   to the best of my ability.

24

25   s/Carol S. Sapala, FCRR, RMR     August 3, 2015

Smith v Hurley Medical Center 15-10288